**JOHN DOE I and John Doe II, Appellants,**

v.

**ROMAN CATHOLIC ARCHDIOCESE OF ST. LOUIS, by and through Justin F. RIGALI, His Predecessors and Successors, as Archbishop of the Roman Catholic Archdiocese of St. Louis, Appellee.**

No. 05–02–01363–CV.

Court of Appeals of Texas, Dallas.

July 22, 2003.

Lori A. Watson and Thomas B. Cowart, Law Office of Windle Turley, PC, Dallas, for Appellants.

Hal M. Browne, Clark Brown & Morales, L.C., Scott K. Huber, Randal Mathis, Mathis and Donheiser, Eric Vaughn Snyder, Robert Fugate, and Barry H. Fanning, Fanning, Harper & Martinson, P.C., Dallas, for Appellee.

Before Justices MORRIS, WHITTINGTON and FRANCIS.

## OPINION

Opinion By Justice MORRIS.

This is an interlocutory appeal. The trial court dismissed the Roman Catholic Archdiocese of St. Louis from the case for want of personal jurisdiction. Appellants John Doe I and John Doe II contend in their appeal that the trial court should have asserted jurisdiction over the Archdiocese. We conclude the trial court ruled correctly and affirm the trial court's order.

### I.

Appellants, who are residents of Missouri, filed this lawsuit against the Roman Catholic Diocese of Dallas, the Archdiocese of St. Louis, and an individual Catholic

priest. Appellants alleged the priest sexually molested them numerous times between 1968 and 1977, while they were minors. All of the alleged sexual assaults occurred in Missouri. At the time of the alleged assaults, the priest resided in St. Louis, Missouri. Although the priest had been a priest at the Dallas diocese, he had moved to St. Louis in 1968 to receive psychiatric treatment, and while there had asked the Archdiocese for a temporary grant of priestly faculties. The Archdiocese granted the priest faculties in 1968, thus permitting him to serve as a priest. He continued working as a priest in Missouri until 1994. He is now a resident of Ohio.

After being served with appellants' lawsuit, the Archdiocese filed a special appearance contesting the trial court's personal jurisdiction over it. In support of the special appearance, the Archdiocese filed the "Affidavit of Most Reverend Michael J. Sheridan." Sheridan testified, among other things, that the Archdiocese is an unincorporated religious association headquartered in Missouri. The trial court granted the special appearance and dismissed appellants' claims against the Archdiocese. This appeal followed with appellants presenting six issues for us to decide.

## II.

■ The Texas long-arm statute governs Texas courts' exercise of jurisdiction over nonresident defendants. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.041—.045 (Vernon 1997); *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002). The statute permits Texas courts to exercise jurisdiction over nonresident defendants "doing business" in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). Because section 17.042's language is broad, its require-

ments are considered satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *See Marchand,* 83 S.W.3d at 795. Personal jurisdiction over a nonresident defendant is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.* (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

■ The plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the provisions of the long-arm statute. *Id.* at 793. A defendant challenging a Texas court's personal jurisdiction over it must negate all jurisdictional bases. *Id.*

■ Whether a court has personal jurisdiction over a defendant is a question of law. *Id.* at 794. In resolving this question of law, however, a trial court must frequently resolve questions of fact. *Id.* We review the trial court's factual findings for legal and factual sufficiency and review the trial court's legal conclusions *de novo. Id.* When, as here, there are no findings of fact and conclusions of law, the trial court's order implies all facts found in the evidence necessary to support the order. *Id.* at 795.

■ Appellants generally contend the trial court erred in granting the Archdiocese's special appearance because the Archdiocese had sufficient contacts with Texas to justify the exercise of jurisdiction and because the court's exercise of jurisdiction would be consistent with traditional notions of fair play and substantial justice. We begin with appellants' sixth issue, in which they argue jurisdiction over the Archdiocese is consistent with traditional notions of fair play and substantial justice.

Even if a nonresident purposefully establishes minimum contacts with Texas, the exercise of jurisdiction by a Texas court may not be fair and reasonable under the facts of the particular case. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex.1991). To determine whether the assertion of jurisdiction comports with fair play and substantial justice, courts examine five factors: (1) the burden on the defendant, (2) the forum state's interests in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

After a careful analysis of these factors, we conclude the assertion of personal jurisdiction over the Archdiocese is not consistent with traditional notions of fair play and substantial justice. First, the burden on the Archdiocese of having to defend itself from plaintiffs' allegations in a Texas court weighs against jurisdiction. The Archdiocese is a resident of Missouri and would incur substantial travel and litigation costs defending itself in Texas. The plaintiffs are also residents of Missouri. The complained-of acts occurred in Missouri. In fact, the only party residing in Texas is the Dallas diocese. Second, given that the alleged torts occurred in Missouri against Missourians and that most parties still reside in Missouri, Texas's interest in adjudicating this dispute is far outweighed by that of Missouri. Third, appellants' interest in obtaining convenient and effective relief would not be impaired if they had to litigate the case in their home state of Missouri, rather than Texas. Fourth, judicial efficiency would be served by litigating this dispute in the state in which most parties reside, most witnesses are likely to reside, and the alleged torts occurred. Texas has no greater claim than Missouri to promoting efficient resolution of this case. Finally, although each state potentially involved in these claims certainly has some interest in their resolution, we cannot agree with appellants that Texas's interest outweighs that of Missouri, given that the alleged torts occurred in Missouri, involved Missouri residents, and would be adjudicated under Missouri law.

Accordingly, we conclude that the Texas court's assertion of personal jurisdiction over the Archdiocese in this case would not be consistent with traditional notions of fair play and substantial justice. We resolve appellants' sixth issue against them. Our resolution of this issue makes it unnecessary for us to address appellants' remaining five issues. We affirm the trial court's order granting the Archdiocese's special appearance.